UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA CHITTY,

    Plaintiff,

v.                                             Case No. 8:09-cv-570-T-TBM

MICHAEL J. ASTRUE,
**Commissioner of the United States**
**Social Security Administration,**

    Defendant.
_____/

# O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

## I.

Plaintiff was forty-seven (47) years of age at the time of her administrative hearing in September 2008. She stands 5 feet, 5 inches tall and weighed 293 pounds. Plaintiff graduated high school and obtained a CNA license. Her past relevant work was as a cashier, meat wrapper, and CNA. Plaintiff applied for disability benefits and Supplemental Security Income payments alleging disability as of June 17, 2007, by reason of impairments and pain in her

shoulder, arms and hands, and due to stress and depression.[1] The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by a representative and testified in her own behalf. Additionally, Plaintiff's son and a vocational expert testified.

In essence, Plaintiff testified that she is unable to work due to problems with her arms, hands, and shoulders. She experiences pain and she cannot lift and grasp. She has had several surgeries. In 2004, she was diagnosed with reflex sympathetic dystrophy (RSD). Walking is difficult. She gets tired very easily and has shortness of breath. She can sit for short periods, 10 to 15 minutes, and then she has to move around. She can cook simple microwave dinners but because of her arm and hand problems, her son does most of the rest of the housework for her and helps her with grocery shopping. She can drive but does so only 3 to 4 times a week to the doctor or to check the mail. She can bathe herself most of the time, but occasionally her son helps with her hair. At the hearing, she wore braces on both hands.

She is bothered by anxiety and depression as well. She is unable to handle being around a crowd or hear screaming children. She fears going out and bumping her arms. Her medications work to a point. The Wellbutrin helps lessen the mood swings; the Xanax helps her rest at night; the Robaxin and Lortab help keep the pain down. As for side effects, she cries more and is more edgy and some days she does not want to get up and face reality.

---

[1]The application for SSI dated July 30, 2007, actually alleges an onset date of July 15, 2001. The application for DIB dated August 1, 2007, alleges an onset date of June 17, 2007.

Plaintiff watches television and rests a lot. She checks her e-mail and keeps in touch with her parents by telephone. She keeps her arms elevated and tries to stay as cool as possible. She sleeps maybe two good hours a night and catnaps during the day. During the day, she spends about fours hours lying down or reclining. She may do things for 30 minutes or so but then has to sit down and relax for 30 or 40 minutes. Plaintiff disputed statements in the report from Dr. Moering, a consulting psychologist, that she swam in an above ground pool and played on her computer eight hours a day.

She claims 25 bad days a month and 5 good days a month. Her pain has increased since her surgery in 2004. On an average day, she rates her pain at a level 9 on a scale of 1 to 10 with 10 being the highest level of pain. She has considered another surgery but has been advised that it would make matters worse. She continues to smoke two packs of cigarettes a day but has quit drinking beer. (R. 23-42).

Plaintiff's son, Brandon, also testified. By his account, Plaintiff cannot do things like cleaning or cooking like she used to. She gets aggravated and loses her temper a lot. He has to assist her with chores, shopping, and dressing. She reclines a lot. They have a small shallow pool. Plaintiff uses the computer 15 to 20 minutes at a time to check her e-mail. She drives short distances. (R. 42-46).

Next, the ALJ took testimony from Jeffrey Carlisle, a vocational expert (VE). After classifying Plaintiff's past work, he testified on a hypothetical question assuming a person of Plaintiff's age, education, and work experience capable of a full range of medium work limited by only occasional reaching in all directions with the left arm and no climbing ladders,

3

scaffolding, or ropes. On that hypothetical, the VE opined such person could perform Plaintiff's past work as a cashier and home attendant as performed generally. On a further assumption of one capable of light exertional work, but no climbing ladders, scaffolding or rope, and no kneeling or crawling and work around moving machinery or unprotected heights, with only occasional climbing stairs and ramps, balancing, stooping, and crouching, and reaching in all directions with the left arm, the VE opined Plaintiff's past work as a cashier would still be available. On a third hypothetical assuming the same postural and environmental limitations, but capable of only sedentary exertional work, such individual could not do any of Plaintiff's past work but could perform the jobs of information clerk, product inspector, and an assembler although the occupational base would be eroded in each job due to the limitation for reaching with the left arm. If such individual could use the upper extremities for fingering and feeling less than one-third of the day, those jobs and all other jobs would be eliminated, as would a limitation for no more than ten hours of work a week. (R. 46-52).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of November 14, 2008, the ALJ determined that while Plaintiff has severe impairments related to degenerative joint disease of the left shoulder status post arthroscopic surgery, mild bilateral carpal tunnel syndrome status post release surgery, left knee contusion, hypertension, and morbid obesity, she nonetheless had the residual functional

4

capacity to perform a restricted range of medium exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a cashier and home attendant. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 10-18). The Appeals Council considered additional evidence and arguments and denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The [ALJ] erred by failing to properly apply Social Security Ruling 03-2P which addresses RSD; and

(2) The ALJ erred in failing to give adequate credit to the Plaintiff's treating and examining physicians.

By her first claim, Plaintiff cites to Social Security Ruling 03-2P (SSR 03-2P) and argues that the ALJ erred in failing to credit her with severe RSD. Plaintiff urges that the ALJ mischaracterized the evidence and her conclusion that the record does not support the diagnosis is unsupported by substantial evidence, legally flawed, and evidences the ALJ's substituting her own lay opinion for that of medical professionals. In support, she notes that Dr. Homan, an orthopaedic doctor, diagnosed her with RSD in the left shoulder; Dr. Shaub noted she had RSD in the right and left upper extremity; and Drs. DiGeronimo and Gupta both found symptoms which support rather than refute the diagnosis for RSD. By the Plaintiff's argument, there was no evidence contradicting the RSD diagnosis. She urges that the ALJ erred by failing to recontact her treating doctors for clarification, and she requests that the case be reversed and remanded for such clarification. (Doc. 22 at 6-9).

In response, the Commissioner urges that whether Plaintiff had RSD or not, the medical evidence did not support a conclusion that Plaintiff's condition impaired her ability to perform work-related activities. Here, the ALJ concluded that Plaintiff had severe impairments in her upper extremities in the nature of degenerative joint disease of the left shoulder and mild bilateral carpal tunnel syndrome. Such conclusion satisfied the inquiry at step two of the five-step sequential evaluation process dictated by the regulations, and the

ALJ's determination regarding RSD thus has import only if Plaintiff demonstrates limitations in the subsequent evaluation process not properly considered.[2] The Commissioner argues that Plaintiff has wholly failed to demonstrate that she is more limited than ultimately determined by the ALJ regardless of the lack of RSD diagnosis. Finally, the Commissioner urges that there was no need to recontact any of the treating sources as the record was adequate to permit a determination on the disability issue. (Doc. 23 at 3-9).

Plaintiff's second claim is related. She complains the ALJ afforded the greatest weight to the opinions of Dr. DiGeronimo instead of her treating doctors, Dr. Homan and Dr. Shaub. Plaintiff urges that rather than discounting the opinions of these treating doctors for a lack of objective support for their diagnoses, the ALJ should have recontacted them to determine their methods and reasons for their findings. Plaintiff urges that the ALJ failed to give adequate reasons for discounting the opinions of these doctors and urges that the reasons stated were not supported by substantial evidence. Again Plaintiff cites to the ALJ's notation for lack of objective medical evidence and urges that such is entirely inappropriate in connection with RSD. Because the ALJ failed to adequately discount the opinions of these treating doctors, Plaintiff urges their opinions should be accepted as true and the case should be reversed for an award of benefits. (Doc. 22 at 9-12).

As for the second claim, the Commissioner again urges that there was no error in discounting the diagnoses for RSD or the opinions of Drs. Homan and Shaub. Significantly,

---

[2]The Commissioner notes that the ALJ acknowledged that two physicians had diagnosed her with RSD. Nonetheless, the ALJ concluded that the opinions from Dr. DiGeronimo were entitled to greater weight, and by his examination there is no diagnosis for RSD. The evaluation by Dr. Gupta resulted in no diagnosis for RSD.

Dr. Homan gave no functional assessment despite the diagnosis and while Dr. Shaub assessed Plaintiff capable of performing work while seated, if frequent breaks were permitted, and for less than ten hours a week, the ALJ properly discounted that opinion testimony as unsupported by the record as a whole. (Doc. 23 at 9-16).

After full review of the decision in light of the medical record, I find no error in the ALJ's consideration of the evidence of Plaintiff's purported RSD which merits a remand. Initially, contrary to Plaintiff's contention, there is evidence of the ALJ's consideration of and compliance with SSR 03-2p.[3] More significantly, as the Commissioner argues, the issue is not just whether the ALJ should have credited Plaintiff with RSD, but whether the ALJ ultimately properly credited Plaintiff with functional limitations appropriate to her shoulder impairment by whatever name. By my consideration, the ALJ did so and Plaintiff fails to demonstrate otherwise.[4]

---

[3]Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Such rulings are not binding on this court, however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981). SSR 03-2P addresses the Administration's policies for evaluating claims based on RSD, a syndrome "characterized by complaints of intense pain and typically includes signs of autonomic dysfunction." *Id*.

[4]The mere failure to credit Plaintiff with a severe RSD impairment is no grounds for reversal here. At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Id.* However, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as

The decision reflects that the ALJ recognized Plaintiff's history of "extensive medical care for shoulder and wrist impairments . . ." and that she considered the same in the context of the whole record. (R. 14). A fair reading of the decision also reflects that the ALJ evaluated the medical record related to Plaintiff's upper extremities consistent with SSR 03-2P and fairly set forth the conclusions from each of the examining and nonexamining doctors. By my review, both Drs. Homan and Shaub diagnosed Plaintiff to suffer from RSD. Dr. Homan, an orthopaedist, apparently saw Plaintiff on two occasions. On the first visit, he addressed her complaints of knee pain. (R. 263-64). In June 2007, on the second visit, Plaintiff complained of pain in her left shoulder during the last two months and sensitivity to touch. His examination revealed limited range of motion in the shoulder and sensitivity to touch and he diagnosed RSD of the left shoulder. (R. 261-62). As for Dr. Shaub's treatment notes, they reflect a longer period of treatment, Plaintiff's pain complaints and the doctor's assessment for RSD bilaterally in her upper extremities (among other diagnoses). (R. 265-68, 305-12, 346-48). As the ALJ noted, in a vocational assessment in February 2008, Dr. Shaub opined, without elaboration, that the Plaintiff could work sitting down if frequent breaks were permitted, but she could not pull, push, or reach above her shoulders and she was limited to 10 hours work a week. (R. 355). Dr. DiGeronimo, a neurologist, saw Plaintiff on referral from Dr. Shaub in February 2008. Again, the complaints were for numbness and weakness in her

---

severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). Here, at step two, the ALJ credited Plaintiff with degenerative joint disease of the left shoulder and carpal tunnel syndrome. The failure to credit Plaintiff with RSD at this step is not significant in light of that finding and because the ALJ moved forward to assess the functional limitations caused by the impairments.

upper extremities. (R. 313-20). This doctor's nerve conduction studies confirmed mild bilateral carpal tunnel syndrome for which he recommended wrist splints and medication. In a follow-up note, he assessed Plaintiff to have reduced strength in the upper extremities secondary to pain and to suffer from "extremity pain" and "shoulder pain" for which he recommended medication. There was no diagnosis for RSD. (R. 319). An MRI of the left shoulder at his direction revealed no evidence of an acute rotator cuff tear, mild chronic supraspinatus tendinitis, degenerative changes at the AC joint, and a small focal area of subdeltoid bursitis. (R. 317). Dr. Gupta, a consulting examiner, similarly assessed Plaintiff to suffer left shoulder pain with abnormal range of motion. His examination found her with 5/5 shoulder, elbow, wrist, and hand strength in all groups bilaterally. (R. 272). He made no diagnosis for RSD and specifically noted "no evidence" in any joint of joint tenderness, swelling, erythema, heat, crepitus, or deformity. (R. 270). Two nonexamining doctors expressly cast doubt on the diagnosis for RSD. In October 2007, Dr. P.S. Krishnamurthy reviewed the medical record and found Plaintiff capable of medium exertional work. The doctor noted the only limitation to be limited range of motion in the left shoulder and that, "[s]he does not have classic reflex sympathetic dystrophy findings." (R. 280). In April 2008, Dr. Albert Polterio similarly concluded that Plaintiff could perform medium exertional work and that the diagnosis for RSD was "questionable." (R. 337). At a minimum, this medical record presented the ALJ with a mixed-bag of opinions related to RSD.

  As set forth above, it is for the ALJ to evaluate and weigh the evidence. In assessing all of this, the ALJ noted that the most recent MRI studies showed only tendinitis,

11

degenerative changes, and bursitis of a mild degree in the left shoulder, and nerve conduction studies showed only mild carpal tunnel syndrome. The ALJ then noted, "[t]here is no objective evidence, examination findings or test results, in the record to support a diagnosis of RSD. The treatment notes do not show autonomic changes, such as sweating or vasomotor abnormalities or dystrophic changes such as skin or bone atrophy, hair loss, or joint contracture." (R. 16). By my consideration, this conclusion clearly reflects the ALJ's understanding and application of SSR 03-2p.[5] Furthermore, I disagree that the conclusion to accept Dr. DiGeronimo's assessment of the condition and to discount the diagnosis for RSD by Drs. Homan and Shaub is unsupported by the medical evidence or represents a mischaracterization of that record. To the extent the Plaintiff suggests that the ALJ erred in these circumstances by failing to recontact either Dr. Homan or Dr. Shaub for clarification of their diagnosis, I disagree. In this case, such was unnecessary to permit the ALJ to reach a conclusion.[6] Finally, even if the ALJ should have labeled Plaintiff's shoulder impairment as

---

[5]As Plaintiff notes, the ruling describes that RSD can be established by persistent complaints of pain that are typically out of proportion to the severity of any precipitant and as showing of one or more clinically documented signs including: swelling, autonomic instability such as changes in skin color or texture or temperature, changes in sweating, abnormal hair or nail growth, osteoporosis or involuntary movements of the affected area. Here, the ALJ found insufficient evidence of such clinical signs in the medical record to support the diagnosis.

[6]SSR 03-2P recognizes the appropriateness of recontacting treating doctors where necessary to clarify a conflict in the record but does not require it. The ruling also recognizes the role played by treating doctors and the deference due their opinion in such matters. "If we find that a treating source's medical opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator will give it controlling weight." Here, the decision reflects the ALJ's conclusion that the medical record lacked such clinical or laboratory support.

RSD, it is not the diagnosis that is determinative of disability but the functional limitations flowing from the impairment. Here, Plaintiff fails to address that aspect of the ALJ's decision or otherwise demonstrate that the ALJ's residual functional capacity assessment did not fairly account for her shoulder impairment.

Nor can I agree with Plaintiff that in reaching her conclusion the ALJ violated this circuit's treating doctor rule.[7] As the decision reflects, the ALJ discounted the diagnosis for RSD by Drs. Homan and Shaub as well as certain opinion evidence from Dr. Shaub. In the case of Dr. Homan, the ALJ noted that the doctor offered no supporting evidence for his diagnosis of RSD in the left shoulder. In the case of Dr. Shaub, the ALJ noted his inconsistent diagnosis of RSD in both upper extremities and the lack of findings to support the diagnosis. As for both, the ALJ contrasted the diagnosis with evidence from the other medical sources which called into question the diagnosis for RSD and the lack of clinical support. Plaintiff again urges that in these circumstances, the stated reasons for discounting the treating doctors is unsupported and that at a minimum, the ALJ should have recontacted the doctors to "determine their diagnostic methods and reasons for their findings." (Doc. 22 at 10).

---

[7]When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

However, as set forth above, the medical evidence as a whole offered adequate basis for the ALJ to discount the diagnosis. More significantly, however, it is not the diagnosis that is key to the disability determination, but the functional limitations flowing from the impairment. As for Dr. Homan, beyond the diagnosis for RSD, his records suggested no functional limitations from the condition. And, while the ALJ rejected the conclusion by Dr. Shaub that Plaintiff could work sitting down with frequent breaks although not for a full work week,[8] she accepted his opinion with respect to upper extremity function as supported by the other evidence. In the end, the ALJ assessed Plaintiff as capable of the exertional demands for medium work but limited to only occasionally reaching with her left upper extremity and no climbing ladders, ropes, or scaffolds. Here, I conclude that the ALJ stated adequate reasons to discount the whole of these two doctors' functional assessment to the extent they rendered such. Again, even if the ALJ erred in not crediting the diagnosis for RSD, Plaintiff does not demonstrate that the medical record supported greater limitations in the left shoulder than those determined by the ALJ.

In sum, Plaintiff simply fails to demonstrate from the medical evidence or her own account of her daily activities that the limitation for only occasional reaching does not adequately assess the limitations in her left shoulder regardless of the diagnosis. By the VE's testimony, even with this limitation, Plaintiff could return to her past work as a cashier/checker and home attendant. That conclusion is not challenged at all.

---

[8]By my review, the records simply do not account for a condition so severely limiting Plaintiff's ability to walk, sit or stand, or requiring frequent breaks and allowing only ten hours work in a week.

14

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 6th day of July 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record